We'll hear argument this morning in Case No. 20-1573, Viking River Cruises v. Moriana. Mr. Clement. Mr. Chief Justice, and may it please the Court, the outcome here is controlled by this Court's decisions in Concepcion, Epic, and Lamps Plus. After those decisions, a State is not free to simply declare that a State statute is too important to be relegated to bilateral arbitration. None of the varying theories offered by Respondent or the lower courts supports a different result. Respondent suggests that the waiver here is an invalid effort to immunize Viking rather than a valid effort to preserve bilateral arbitration. But Viking remains liable to Moriana for any labor code violation that she can prove affected her personally, and remains liable to the State for civil and criminal penalties. The only thing that is foreclosed is Moriana's effort to inject the facts and circumstances of countless other workers into this dispute, despite her agreement to arbitrate bilaterally. The Ninth Circuit viewed PAGA claims as more consistent with arbitration than class actions, but employer-wide PAGA claims are very similar to employer-wide FLSA collective actions, and Moriana's own complaint demonstrates the great difference between an effort to inject all manner of labor code violations for the entire sales force, as opposed to Moriana's dispute about her final paycheck. The former requires a claim settlement process borrowed from a class action manual. The latter can be arbitrated in an afternoon. California's Supreme Court, for its part, said that PAGA claims are outside the FAA entirely, based on a misplaced analogy to Waffle House. But Iskanian's theory that the PAGA claim belongs to the State, and the State didn't agree to arbitrate, would make all PAGA claims, whether individual or employer-wide, immune from arbitration, which would make the conflict with the FAA unmistakable. And the analogy to Waffle House is a non-starter. Here, the same party that is in court seeking to litigate on behalf of the entire workforce is the self-same party who agreed to arbitrate bilaterally. I'd welcome the Court's questions. Mr. Clement, if somebody else, a different employee of Viking Cruises, brings a PAGA action that by its terms would include Ms. Moriana, would she be able to be included among the group of people, the large group of people, that would recover under that action? In other words, she would not be bringing the action herself. It would be brought by somebody else, and she would be among the beneficiaries under California law of that action. I think, Mr. Chief Justice, that that would still be foreclosed by the class arbitration PAGA waiver here. The provision, and it's reproduced at page 13 of the blue brief, but it has essentially two subsections. The first involves the employee saying that they won't bring a class action, a collective action, or a private attorney general action, and then it continues to say that they won't participate as a member in a class action, a collective action, or a PAGA action. So I would think that based on the contract that Moriana has foreclosed, her ability to essentially benefit from that kind of employer-wide PAGA action. But if I'm wrong about that, I don't think it changes the outcome in this particular case. I think here the important thing is that this action shares the fundamental attributes of a class action and a collective action that make them inappropriate for traditional bilateral arbitration. They aggregate multiple claims in a single proceeding with heightened stakes and wide discovery. Well, but this is what strikes me as one difference is that this is not her cause of action. This is the state's cause of action. It is an action, it's the attorney general's action. She's acting not really as, would be acting not simply as herself, but as a delegee of the attorney general and would be securing a recovery for the state as well as for other employees. But, Mr. Chief Justice, I don't think that's the critical feature of PAGA. It's certainly not what we object to. So if Ms. Moriana wants to bring an individual PAGA action, assuming that that exists, if she wants to bring that in arbitration and 75% of the recovery of the penalties provided by that statute go to the state, Viking has no objection to that. So it's not the state's involvement here as sort of a latent real party in interest, however you want to characterize them. That's not the gravamen of our concern. The gravamen of our concern is that this action is not just trying to litigate Moriana's labor code violation, but the labor code violation of essentially the entire sales force. But that is what the state has decided is necessary to adequately enforce its own labor laws. I mean, the state has made a decision here. And it's we don't have the capacity to do this ourselves. We need private people to do it, and we need private people to do it in this way. They're not going to come in with a claim for $2.32. So this is a state decision to enforce its own labor laws in a particular kind of way that the state has decided is the only way to adequately do it. And essentially your position says, you know, the state just can't make that decision, even though that's the way that the state has decided best serves its sovereign interests. At the end of the day, that's right. But the state made a decision in Concepcion, and this court said that that state decision has to yield. And I don't think it's functionally different. I mean, a state could say, boy, enforcing our labor code is really important, so we are going to provide particular penalties that are only available in a class action. And then if somebody tries to invoke their class action waiver, we'll say, ah-ha, you can't invoke the class action waiver because we've put these penalties behind a firewall. They're only available in class actions. So now you're not just waiving the class action. You're waiving the substantive penalties we've put behind the class action firewall. I don't think that — It's an honest answer that you just gave, but I'm wondering whether anybody, when they were enacting the FAA about, you know, making sure that people could agree to arbitrate and making sure that courts would not disrespect those agreements, whether anybody thought that the FAA was going to end up precluding the ability of the state to structure its own law enforcement with respect to labor violations. You know, just to say to the state, you can't do things a certain way. You can't enforce your labor laws in that way. So, Justice Kagan, I mean, it's an interesting question whether the FAA — the Congress that passed the FAA in 1925 would have foreseen the kind of class actions at issue in Concepcion, the kind of collective actions that were provided for in the FLSA that were at issue in the Epic case, or whether they would have foreseen this particular kind of PAGA action. But I do think that certainly if we take Concepcion and Epic and LAMPS Plus as a given, and nobody's asked you to overrule those cases here, the logic follows directly that just as the state can't say, you know, these class action waivers in the consumer context, that's not something that we really cotton to here in California. We're going to find those sort of categorically unconscionable. This Court said that state policy had to yield. I don't think the state policy here is any more sacrosanct. And I do think it's worth noting that this is a very anomalous statute that's at issue here. I think it's telling that no other state has showed up to participate as an amicus in this case, and I think that underscores what an outlier this PAGA remedy is. It's an exceptionally good device if you're trying to circumvent the Concepcion and Epic decisions, but it really is an outlier in terms of what- It may be, but I tried to write on a list, and you have what are the differences between this and a class action. There are quite a few. I mean, one of them is you're not looking at the damages of the other employees, just trying to see if there's a violation of the code. This employer did respect some other employees, and the money then is set and goes to California, and they distribute it to the state. And then some other ones are that there's no right to receive notice. I wrote them down. No right to intervene. No right to object to- There is no appeal from the settlement approval. There's no procedural formalities. Rule 23 doesn't apply. There's no numerosity. There's no commonality. There's no typicality. There's no representation. And all those procedural things, of which there are a lot, the arbitrator doesn't have to go into. I mean, it's not a class action. It's more like a qui tam action. I never heard that you couldn't agree to have an arbitration of a qui tam action. Why not? So, Justice Breyer, when you tell me all the things that aren't present in these kind of actions, I sort of get a chill down my spine, because many of the things that you're talking about are the essential protections for a defendant in the class action. Sure, some of them are there to protect absent class members as well, but they are the things that keep a class action within the rails. Yes, so in fact, I guess, if there's some problem of due process or something with that, if there was no arbitration agreement and this individual brought a paga action in a court, it would be the same. So if you think it's unfair to the defendant, it's unfair in court. It's unfair wherever you go. But there's two critical differences that make paga actions really exactly the same as class actions, and I think they are the two things that are most material for purposes of applying concepcion and epoch. One of them is that you have massive liability. Sure, it's not damages, but the penalties here are actually larger than the damages associated with most of these labor code violations. So you have these massive claims in terms of their monetary amount, and the massiveness is not driven by the inherent nature of the claim. It's driven by the aggregation of multiple claims. But you are not contesting that the state could bring this lawsuit. Is that right? And the state could do it in this completely aggregated way. I think that's right. And then the state would bring it in court, and that really gets to the second piece of this, which is the critical thing is if you have these massive damages from aggregating claims, and then you have, I mean, California has made it clear that the discovery in these paga actions is coextensive with discovery in class actions. So courts are very good at dealing with those kind of discovery issues. Arbitrators are very bad at dealing with class-wide discovery. And at the same time, given the high stakes because of the aggregation of the claims, if I'm a defendant and you're telling me I can't escape this kind of aggregate litigation, it's going to happen. It's going to happen to me either in arbitration or in litigation. Then I'm going to pick litigation every time because I get lots of additional judicial review and judicial remedies available to me there. And what that's going to mean in practice is that arbitration is going to wither on the vine. Okay, so it's about what you're saying. So your point, I just want to be clear on this, is that, okay, suppose you win. If you win, then they can't bring this kind of action in arbitration. You can't agree to it and so forth. But you could bring it in court. Well, if I win, then the bilateral arbitration provision will be enforceable. And Ms. Mariana cannot bring the claim in court. Oh, let me understand this. In other words, we have a state action. It's a provision there for the state. And Mr. Mariana says, I agree to bring this only in arbitration. But that she can't do, in your opinion. Cannot arbitrate this. Well, she can arbitrate her own claim. No, I understand that. She can't arbitrate this big thing, okay? She cannot arbitrate the monstrosity. Got it, got it, got it. You can't arbitrate it. Okay, I'll go to court. Oh, no, you agreed to go to arbitration. I mean, I hate to tell you that reminds me of Catch-22. You agreed to go to arbitration, but you can't go to arbitration. So you can't agree to go to arbitration. But because you agreed to do it in arbitration, you can't go to court. That's your view? No, that's not my view. My view is, if you agree to go to arbitration the way it was understood in 1925, and the way it's been traditionally understood, which is a bilateral proceeding, you can get all of the remedies available to you as an individual. You can't get all of the same remedies you would if you didn't sign an arbitration agreement that involved a pledge to arbitrate bilaterally. The one way to make Justice Breyer's point is that you're sort of trying to have it both ways. You're saying this aggregate claim is so different from her individual claim that we can't possibly allow it in arbitration. But then when she goes to court, it turns out to be it's not so different because you're precluding it in court. So it really is the arbitration agreement that affects her individual claim also prevents her from doing the aggregate claim. And as I said, what all this does is prevent the state from protecting its own sovereign interests in the way it has chosen to do. I will be honest and agree with you that this federal statute does impose limits on the state. That's commonplace of the Supremacy Clause and preemption analysis. The state doesn't have free reign. It is a commonplace of preemption analysis, but in our best moments when we use preemption, we do it based on something that a statute says. And there's nothing that this statute says about arbitration procedures that reasonably understood extends to a state decision like this one to enforce its state labor laws through private parties. Justice Kagan, that's where I disagree with you. And I think the majority of the court took a different turn in Concepcion and Epic. And I think it's even clearer in Epic. And I think Epic correctly just reads Section 2 of the FAA as a direction to enforce the terms of a party's arbitration agreement as written unless there's some generally applicable state law that says otherwise that makes it inapplicable. But Epic is like really quite specific, more so than Concepcion, about how it is that the text of Sections 3 and 4 and their emphasis on certain kinds of streamlined procedures are responsible for the Epic device. And as Justice Breyer suggested, this is not essentially a case about the complexity of procedures. It's a case about the complexity of a substantive claim, the high stakes of a substantive claim as California has defined it. It's not about streamlined procedures. I think it ultimately is because the streamlined procedures in bilateral arbitration are just incompatible with this process of taking lots of employees' claims, aggregating them in a single proceeding, raising the stakes and saying we're going to have employer-wide discovery. And I think in some respects, if you want to talk about the differences between class actions and employer-wide PAGA actions, I think they are materially similar in the critical respects, but the parallels are even closer between an employer-wide PAGA claim and an employer-wide FLSA collective action. I'm having a series of problems with all of your answers. PAGA came eight years before Concepcion or Epic. So it's not California creating an intentional evasion of Concepcion or Epic, correct? It didn't intentionally predict that what we were going to do there and say now we've got to find a way to get around Epic and Concepcion. So, Justice Sotomayor, I'm not going to disagree with you on the timeline, but I will say that PAGA could have been interpreted a number of different ways in Iskanian, and the Iskanian decision, which is, I think, the focal point of this. Let's put that aside, however the courts interpret it. Now, let's go to the second point. In 1925, there were plenty of representative actions, arbitrations. 1925, there were railroad arbitrations that were representative arbitrations. There were navigation maritime arbitrations. There were agricultural arbitrations. All of them were representative. All of them were complex. We don't have a rule that says arbitration is incapable of dealing with complex cases. We have permitted arbitration in RICO cases, in securities cases, in antitrust cases, in sexual harassment cases. All of those cases involve very complex issues with proof related to parties other than the individuals bringing them, involving in RICO patterns of RICO activity of racketeering that involve multiple layers of crimes. In sexual harassment and disparate impact claims, we have to have the plaintiff prove what happens to a bunch of other people. So when you say to me that complexity or multiple proof is incompatible with arbitration, it's not incompatible. We haven't said you can't, with the permission of parties, litigate a class action, with the permission, I'm sorry, arbitrate a class action. We let parties make that choice. The question here for me is not whether the case is too complex. I don't see it as incompatible. The question is the one that Justice Kagan raised, which is how do we read a substantive state law, a substantive cause of action by a state that says, if you do something, this is the penalty, this is the amount you pay us. The mechanism we're going to collect is going to be the PAGA mechanism. But I don't see anything in the FAA that says we preempt that, because they're not anti-arbitration. You can do it in arbitration or you can do it in litigation, your choice. And you say, but it's really not a choice. I'm never going to, me, the employer, is never going to permit this in arbitration. Well, that may or may not be true. Some employers might choose it. But on the other hand, if you preclude employees from bringing it in arbitration, you're precluding the state from having an effective enforcement mechanism, because each individual employee is not going to have a financial incentive to bring these suits on behalf of the state. That's what you're banking on. You're banking on destroying the state's mechanism for enforcing labor law violations, aren't you? No, Justice Sotomayor, we're not. Moriarty can still bring her claims. Those claims are backed by attorney's fees provisions. No, sir. What's the incentive? The entire incentive for California was to ensure that employers did what they were supposed to do. And the only way to make sure that is to tell them, if you violate the law, you are going to be subject to a claim by us, through our representative, for all of your violations, not just one tiny piece of one. So, Justice Sotomayor, I think you're making my point, which is you're right. The state made a decision that the way we're going to enforce these labor code violations is we're going to let one employee litigate the entire sales force, the entire workforce, and bring all these claims in a single proceeding. And the state's decision to do that is no different from the state's decision to want to have class actions or collective actions or to say... or forced to do. This is something totally different. This is a state substantive cause of action. Give me a case in preemption law that says that a substantive state cause of action is implicitly preempted. I've got a bunch of colleagues who don't believe in implicit preemption. So, cite to them other than Epic and Constance Hill. Where have we ever said that? So, Justice Sotomayor, to the extent it's relevant, both the California Supreme Court in its amalgamated decision and California in a recent brief have described PAGA as a procedural statute, not a substantive statute. It doesn't regulate new primary conduct. That continues to be regulated by the labor code. So, California itself uses this as procedural. But at the end of the day, like most distinctions between procedure and substance, that can't ultimately be the answer. That's just a construct. And you could say a statute is procedural if what it does is say that you can only get a treble damages remedy if you pursue it through a class action. I don't think a state can get around Concepcion. I don't think it can get around by Epic by passing that kind of weird gerrymandered remedy and then saying, aha, now your class action waiver isn't just an innocuous provision to promote bilateral arbitration. Now it's an exculpatory clause. I don't think that works. And that's directly parallel to this action. And with respect to how anomalous this action is and how different it is from a RICO violation or any other sort of violation that's known to the common law or statute where you do have to proofs up some other conduct of another party, I do think that's where the fact that no other state comes in here defending California and PAGA speaks volumes. As a general matter, maybe you have to prove a pattern in a RICO claim, but your interest as the plaintiff is to prove as small a pattern as possible. You just want to check that box, get that element proved, and then you want to show all the damages by reason of that. Here, the plaintiff has an incentive to spread the net as wide as possible and prove of each additional violation they prove as to some employee they've never met. You're not saying, are you, that the FAA on its face doesn't permit the state to have this rule outside of arbitration? Of course not, Justice Sotomayor. They can have whatever policy choice they want to have outside of arbitration. But when parties come in, and we talked about what the parties agreed to. Here, the parties agreed to resolve their disputes through bilateral arbitration. No, the parties agreed that if there was a private attorney general action, that they would do it in court, not arbitration. The employer had a choice, the employee had a choice, the employer chose to say, I don't want to do this in arbitration, I'd rather do it in litigation. No choice was ever taken from them. They could have done it in arbitration if they wanted. They chose not to. The choice, with all due respect, that's being taken from is the choice to arbitrate on a one-to-one bilateral basis. Any claim Moriana has, any claim she suffered, she can bring in arbitration. But what she can't do, whether it's through a class action, an FLSA collective action, a PAGA claim, or anything else, is inject the facts and circumstances in violation of all her co-employees into the case. And, of course, at the back end, all of the complexities you have in class actions are still present, because you have to identify the absent employees, because all the absent employees are entitled to their 25% check. And so you have to identify them, and then you have to use a claims administrator to identify them and send them their check. Do you have any idea why California chose this particular structure? It could have, unless the California Constitution prohibits this. It could have just said that anybody in California, or perhaps any place else, could bring a suit to vindicate any violation of the labor code. And that person wouldn't be in any sort of contractual relationship with the employer, and therefore I don't see how the FAA would come into the picture. But California chose to do it in this particular way. Do you have any idea why they did? Why did they tie it to somebody who has a contractual relationship? So, Justice Alito, I think the best I can give you is that California actually had an experiment, not in the labor context, but in the consumer context, with a statute that did basically let anybody sue. And that proved, in practice, too much, even for California. So they backed that down and said you really have to have bought the product, and then when it came to labor code violations, they said you have to be an aggrieved employee. Now, I think ultimately that probably might have something to do with the due process clause, or to put it differently, if they didn't have that constraint, I would be happy to argue that you just can't have a statute where everybody under the sun can sue. It's just not consistent with due process. But that's obviously an argument for another day. But I think in practice, California had a brief experiment, a different statute, where it was Katie, bar the door, anybody can sue, and they did not like that. But I wonder, Mr. Clement, if that is exactly the argument that you're making for this day. In other words, the question of how the FAA relates to this, this is not an agreement not to litigate. This is an agreement not to bring a substantive claim, not to bring it in arbitration, and not to bring it in court. So the question is whether a California rule that says you can't waive a substantive claim in that way across all forums is going to be struck down by virtue of the FAA. And all your arguments are essentially like this is really unfair to defendants, but if it's unfair to defendants, you have a due process claim. This is not an FAA problem. So Justice Kagan, it happens to be unfair to defendants, but it also happens to be radically inconsistent with bilateral arbitration and the resolution of disputes through the traditional characteristics of arbitration. So it's maybe from the perspective of my clients a happy coincidence that this anomalous claim that nobody else has that blends procedure and substance in weird ways. I mean, you keep calling it substantive, but California calls it procedural. But at the end of the day, it doesn't matter because this is a claim that because it aggregates all these multitude of claims involving distant employees, puts them all in one proceeding, gives you class action discovery as wide as class actions, it does all that. It's nothing that looks like the kind of thing that's suitable for bilateral arbitration. And since Congress protected the ability of parties to agree to bilateral arbitration, no matter how much California thinks it's got a better way to do things, it just has to yield when it comes to people who are parties to arbitration agreements. As to other people, as to employees who are not subject to the FAA and the like, they can have their policy and subject to the due process clause, there's not much my clients can do about it. But if they have a binding, valid arbitration agreement to resolve their disputes bilaterally, I think that should carry the day under the FAA. Thank you, counsel. Justice Thomas, any questions? One question, Mr. Chief Justice. Thank you. Mr. Clement, there's been quite a bit of discussion this morning about the interest of the state in enforcing its labor laws in this manner. Under PAGA, I think that's the way you—I would just say P-A-G-A, but— and my question is, wouldn't it—you wouldn't be here making this argument if Terminex and Southland had come out the other way, right, since this is state court? So, Justice Thomas, I wouldn't be making this argument in this case to you. I'd be making this argument in a case that came out of the Ninth Circuit, and the analysis would be exactly the same. And as we suggested in a footnote in our reply brief, I mean, far be it for me to tell you how to do your job, but it seems to me that there is a difference between legal questions that, under your jurisprudence, you think sort of don't even arise or don't exist, like whether—you know, what does the due process clause say about punitive damages? Nothing. But this is a case where your own jurisprudence would give you the same answer, I think, as a majority of the court if this case arose out of federal court. And it seems to me there's a lot to be said for under those circumstances when the respondent hasn't asked you to revisit any of those precedents, hasn't even really pressed the claim that it matters that this arises out of state court. I think it would be better just to apply this court's own precedents. Thank you. Mr. Clement, I would have thought advocates are always telling us how to do our job. Justice Breyer? The termite case was my first case. The termite company liked it, I think, or didn't like it, I can't remember. But the point is that, in this case, I think you said a very helpful thing to me. Intellectually, you said, chill. Do you remember when you said chill? Okay, so I have the case now divided into two parts in my mind. I'm going to ask you about the second part. The first part is I just go, look at this, and I go, look at the conception where I was in dissent, but let's forget that. And I accept the majority there, and I say, is this, in the chill factor, distinguishable or not? Some things are different, some things are similar. Okay, I got how to do that. Now, suppose you win that. Suppose I say, okay, you win it. The next question, and that's what I think is pretty tough, is very well, can Marietta bring the case in court? Okay, so you want to say no, but there are a lot of dicta anyway. Where, in FAA cases, there are certain things you can't send to arbitration, but they can't force you to waive them because of the arbitration. You then can bring it in court. And so if California says, okay, you can't bring it in arbitration, that's what the Supreme Court says, so bring it in court, and you can't waive that. Now, is there anything in the FAA that says, California, you can't do that? I can't see what it is. I mean, I don't know, what section does it say you can't waive a court proceeding? And you can say, well, of course you can. You can say, I waive the court proceeding and go to arbitration. Well, you can, but you've just won the first part, so you can't go to arbitration. I think that's what Justice Kagan and others and I, what we've been concerned about. I mean, if it were a federal claim, I don't think you could waive it. This is a state claim. And so I find it difficult. It's not obvious. And so I'd like you to say whatever you think about that. So, Justice Breyer, I mean, the premise of the second part of your question is that you're accepting that there's a chill here equivalent to conception. If you lose on the first part, I don't have to reach the second. But if you win, I think I do. But if I win the first part on the premise that there is a comparable chill here to the chill from class action to conception, then when you get to the second step, it doesn't make any sense to have a different result than in conception. After conception. But that's about arbitration. I'm saying bringing it in court. Now, they can't bring it in arbitration because you won on the chill business. Okay. So, California, we imagine, says, employee, you cannot waive your right to bring this in court. Okay. So that part of the contract that says I'm going to arbitration where I can't go, that's invalid, says California. You can't do that. You can't put that in the contract. Okay. Now what? So, Justice Breyer, go back to the analogy to conception. The result in conception wasn't, aha, the conceptions win, or rather they lose this case, they have to arbitrate, but they can still bring their class action in court. This is a matter of California's substantive law. It's procedure, yes, but it's the labor code. And we want to say people can enforce this in court. But here's the thing, Justice Breyer. She can bring her labor code claim. That's the substantive law. She can bring that arbitration. But I mean for others, for others too, in court. She can bring her claim in arbitration. She can't bring it. Mr. Clement, this is the state's claim, and all that the state has done is that instead of doing it itself, it has enlisted private attorneys general. We know governments do this all the time. We had a case yesterday where the U.S. government does it, not maybe in the exact same way, but the idea of enlisted private attorneys general is a very old one. And you can call this procedure, you can call it substance, you can call it whatever you want, but I think what Justice Breyer is saying is that what this does is that it waives a right to bring a state law claim, a state law claim that has been created and given to this person in any forum, any forum, not just in arbitration. So Justice Kagan, all of that tradition of using private attorneys general, it's consistent with that that the government has to take the private attorney the way that they find them. And if that private attorney has agreed to arbitrate their disputes and arbitrate them bilaterally, none of your court's cases say, aha, well, this is the antitrust laws. We sort of think of those as private attorney general laws, so you can't agree to arbitrate that. That's exactly the argument that didn't carry the day in cases like Mitsubishi. So just by saying it's the states, I don't think that really changes anything. And in fact, I think it proves too much, because if you accept the argument that, well, it's really the state's claim and the state didn't agree to arbitrate it, well, then you're saying that no arbitration agreement that the individual actually signed is valid. Whether it's for an individual claim or collective claim, that's just the state saying, we're not going to let you arbitrate this claim because it's really, in some metaphysical sense, ours. And I don't think that can possibly work. So at the end of the day, the critical thing here is the fact that it's not that they call it the state's claim, but they let all of these other multitudinous claims into this one proceeding, and that's inconsistent with bilateral arbitration. Justice Alito, anything further? Justice Sotomayor? Justice Kagan? Justice Gorsuch? I have a question, Mr. Clement. So a lot of the questions that you've gotten today have been about whether this is a substantive claim or a procedural apparatus or procedural mechanism. Would we be bound by eerie, by what the California courts think about this claim? Because it seems to me they've characterized it as procedural. So if we're making an eerie guess and it's a question of state law, it seems to me hard to say that it's substantive. But maybe it's a question of federal law under the FAA that we're obliged as a matter of federal law to characterize this. Which is it? I think it's ultimately a question of federal law. I mean, the fact that the states have called it procedural, it might make it convenient for me to say, oh, well, you should defer to them. But I don't think that's right. And I think the proof is kind of in the pudding. I mean, the Preston case of this court involved an exhaustion requirement, and it's an exhaustion requirement that I think would be substantive for eerie purposes. But nonetheless, this court said it doesn't matter. We find FAA preemption. Similarly, in the FLSA context, it's sort of a reverse eerie situation. And the collective action procedures under the FLSA, which can be brought in state court, I think, you know, those probably are federal to the extent they're specified. They pick up state afterwards. But none of that makes any difference under EPIC. I mean, they're all, whether they're state court FLSA collective actions or federal court FLSA collective actions, they're still subject to the FAA. They're still subject to preemption. So I don't think the eerie line is the right line here at all. Thanks. Thank you, counsel. Mr. Nelson. Mr. Chief Justice, and may it please the court, PAGA, or the PAGA, creates a right of action that entitles an individual employee to sue on the state's behalf to recover civil penalties for labor code violations. California law prohibits enforcement of a pre-dispute contractual waiver of the right to bring a statutory cause of action involving public rights, like PAGA. Whether or not the waiver is in an arbitration agreement, the anti-waiver rule is neutral as to arbitration. It demands only that there be some forum in which an individual can assert a PAGA claim. Viking's employment contract with Ms. Moriana explicitly prohibits private attorney general actions and representative actions. As Viking puts it, it targets PAGA claims by name. It prevents Ms. Moriana from bringing in action for PAGA penalties in any amount, in any forum. And as Mr. Clement has explained today, it also prohibits anyone else from seeking PAGA penalties for violations that affected her. The Federal Arbitration Act does not require enforcement of such an agreement and does not conflict with the anti-waiver rule. The FAA's plain language provides for enforcement of agreements to settle controversies by arbitration, not to bar their assertion altogether. Nothing in its text, structure, purposes, or legislative history suggests it was intended as a mechanism for enforcing contractual waivers of statutory rights and remedies, let alone rights to assert a representative cause of action on a state's behalf in a state court. Viking has no response to that textual argument and instead relies on purposes and objectives preemption. But purposes and objectives preemption requires a basis in statutory text, which is lacking here. Moreover, PAGA claims are asserted bilaterally and require no procedural formalities inconsistent with arbitration. California's anti-waiver rule is not preempted by the FAA. I welcome the Court's questions. Mr. Nelson, your friend touched on this question. You seem to have a disagreement over whether class actions or PAGA actions, which one is less cumbersome, which one is less contrary to the arbitration principles of ease of administration and simplicity and quickness. What do you have to say to his point that all that you've gotten rid of in PAGA actions are the things that were helpful or favorable to the defendant? You know, the adequate representation, common questions of law or fact. In other words, you seem to think that it's a good thing that those are gone, and Mr. Clement suggests that it's a bad thing from the point of view of the arbitration policies. Yes, and I guess my answer is all that you've gotten rid of in the PAGA action is those features of the class action that the Court said in Concepcion and Epic were inconsistent with the nature of arbitration. And, you know, those protections, which actually I think are primarily there to protect the due process rights of absent class members, as the Court explained in Concepcion, and thus require procedural formalities that the Court saw as inconsistent with arbitration, none of that is required here. It's undisputed, because the nature of a PAGA claim does not involve the kinds of personal rights of third parties that are entitled to that due process protection. If the State brings its action for PAGA penalties, there's no need to certify a class or ensure adequacy of representation or offer those third parties any rights of participation in the agreement or in the arbitration or the adjudication in whatever form it takes place. That would make it cumbersome in the way that the Court has held is inconsistent with the nature of arbitration. Now, sure, PAGA claims, like a lot of other claims that are arbitrated, they may involve high stakes. Although in PAGA's case, that's ameliorated by the fact that, unlike in a class action or a collective action where the recovery is dictated by the proof as to the damages of all those third parties, in a PAGA action, the base penalty is set by just mechanical proof of the number of violations per pay period, and the adjudicator has discretion to limit those penalties, regardless of what some third party might want, if the result would be unjust, arbitrary, and oppressive or confiscatory. The adjudicator can also limit discovery and the presentation of evidence in order to confine the claim to manageable scope. But in any event, the key thing, I don't think this Court has ever suggested that if a claim is just so big that somebody might prefer not to arbitrate it, that they have the option, in addition to just cutting it out of their arbitration agreement and letting it proceed in court, to just say, no, the individual is required to arbitrate all their claims, but some claims you just can't bring, and you can't bring them in court either. I was just going to say, one of the difficult or new parts of this area of the law under PAGA, of course, is the state's recovery, in addition to the private individuals. And I'm wondering if the result, well, how would you handle a law that said, for example, in every private recovery, there's no PAGA, it's just the successful plaintiff must give 2% of her recovery to the state, you know, to cover the expenses of the forum or the state's administration of the law. Does that change the nature of a proceeding that otherwise, under our cases, would be subject to arbitration? No, Your Honor, I don't believe that would, you know, any more than the fact that certain recoveries are taxable as income. The difference here is that the claim for civil penalties, undisputedly, is the state's claim. It's not simply the state taking, you know, a portion of someone's recovery for them. Well, let's just say you say that, you know, because the state provides the laws and all that, in theory we think any recovery is, whatever you want to say, facilitated by or, you know, provided by the state, and you've got to give us 2%. That seems to me to be a pretty formal distinction. Well, I think not. But I don't think anybody would say that in that action the individual is representing the state to seek a recovery on its behalf for some violation of the state's sovereign interests in enforcement of its laws. It's just saying, you know, you have a user fee for the courts. I don't think that changes the nature of the right asserted from being an essentially private right. And in this case, as my friend has explained, you know, to the extent that of the nine violations that affected Ms. Moriana in this case, if she has damages resulting from that or some entitlement to an individual recovery, which for a couple of the violations she doesn't, she could pursue that on her own behalf, and everyone agrees that that is an arbitrable claim and that she can't pursue that as part of a class action under Concepcion if she's agreed not to. But the civil penalties for those violations are the state's penalties. The state has afforded a cause of action for individuals to recover those both for violations that affected them and that affected others. And the agreement here requires or provides that Ms. Moriana waives the right to obtain those civil penalties for violations both affecting her and anyone else. Mr. Nelson, what if California created a cause of action that could be vindicated only in a class action suit? Justice Kagan pointed out to Mr. Clement that not permitting the PACA claim to proceed here in arbitration would be overriding or on a class-wide basis, essentially, would be overriding California's chosen enforcement mechanism. What if its chosen enforcement mechanism in something that we would consider a cause of action was class action litigation or class-wide litigation? What then? I mean, I guess if the class consists of a group of individuals who each have an individual cause of action but they can only pursue that through a class action, I don't think that that would be permissible. I think if California were to create a right that was held collectively by a group of people such that, you know, like a corporation or an association, it could only proceed to obtain that recovery in its own name, I don't think the FAA would provide a mechanism for defeating that kind of claim. So it's most important to you that this claim, as you say, belongs to California. That's the most important piece of your argument, you would say. I'm not sure that that is the most important piece of the argument because my argument is also that if California affords an individual a right to a particular recovery, I think, you know, my premise there is that the FAA cannot be used as a mechanism to, you know, sort of defease that right. So, you know, and that exists regardless of whether the right is individual or held by the state. But what makes this particular action not the kind of collective, multi-party, aggregated action that concerned the court in Concepcion and Epic is, in large part, that the substantive right being pursued is the state's unitary right to civil penalties for this collection of violations through its individual representative. So if the action were brought by the state, it's clear that's bilateral litigation between the state and the employer. If it's brought by the state's representative, it's equally bilateral litigation or arbitration if there's an agreement to arbitrate these claims instead of waiving them. It would be a bilateral proceeding between the state through its individual representative and the defendant. For purposes of the FAA question that is before us, are we bound by California's characterization of this PAGA claim? Justice Barrett asked whether we are required to regard it as procedural rather than substantive. And I have Mr. Clement said it's a question of federal law, even though that seems to advance his argument. But I have a similar, I have a related question. Are we required to regard this PAGA thing as a single claim for these purposes? Or could we not understand it as a set of claims, a PAGA claim as in reality, a set of claims integrated into a single action by an implicit rule of claim joinder? And if we viewed it that way, could we not hold that freedom over arbitration procedure, recognized by Epic and Concepcion, implies that parties can choose a different rule of claim joinder? In other words, one that would limit arbitration to claims based on personal injuries. Justice Alito, I just want to start my answer by saying that I think your question, although similar to Justice Barrett's, is a little different. And so the answer to it may also be different. I agree with my friend that the state's characterization for purposes of the particular issue that was in front of it in the amalgamated case of the right as being procedural versus substantive would not control the same question in a federal court either for eerie purposes or for purposes of the FAA to the extent that substantive versus procedural is an important part of the FAA analysis. But as to the nature of the claim, its requisites, what it is for, and how it proceeds, on those aspects I think the court is bound by California law. Now, the Iskanian decision I think had kind of an interesting passage where the California Supreme Court said, you know, we think perhaps that if what the state was trying to do was just a subterfuge to avoid the FAA, that you might be able to kind of look through the, you know, a statute that provided for collective proceedings aggregating individual claims under the, you know, sort of a false flag label that it was something different. So, I mean, it's conceivable that in some set of circumstances if there were some indication somehow that the state was, you know, acting in bad faith in the manner in which it had interpreted its law, but I don't think this court has ever done that in this context or any other. Well, this doesn't seem like one claim to me in any ordinary sense of the word. It's a bunch of different, it involves a bunch of different violations. They don't even have to be, they don't have to be violations of the same code provision, do they? They do not have to be violations. Yeah, they don't have to be violations of the same code provision. They don't have to involve, they don't involve the same employee. I don't know when, it's not like RICO where you have to prove a certain number of predicates in order to make out your claim. These are all like independent, they look like independent claims to me. Would they be one claim for purposes of claim preclusion? For purposes of claim preclusion, I think that what the California Supreme Court has suggested and the lower courts is you would look at the unit that was litigated in a prior case and if it involved a claim of violations that if pursued by the state would have a particular scope, it would preclude claims of that scope even perhaps if it were settled on a narrower basis. So claim preclusion is not individual violation by individual violation under PAGA. I want to talk a little bit more about this question of substance versus procedure because as my friend noted, substance and procedure may mean different things in different contexts. And I think what's critical in the FAA context, what the court has described as substantive and as the kind of substantive claim that an individual does not waive by agreeing to arbitrate a case rather than litigate it is the right to pursue a statutory remedy. And that's clearly what this agreement waives for Ms. Moriana and for the state to the extent that she represents its interests in a particular manner. It does not permit her to pursue that statutory remedy. And there's nothing, as I think Justice Breyer pointed out, in any of the court's precedents in this area where the court has said that an arbitration agreement, which is by nature supposed to be enforced insofar as an issue is referable to arbitration and then that issue is to be arbitrated according to the terms of the agreement, that that arbitration agreement can be used as a vehicle for extinguishing a right to a remedy that is not under the terms of the arbitration agreement referable to arbitration. Well, I guess I'm having trouble following that. She doesn't have a right to pursue the substantive claim in court, but she does have a right to pursue the substantive claim. It's just an arbitration. And I thought that's sort of at the core of our precedents. I don't understand. There is a difference between the right and the remedy, and that's what arbitration gets at the remedy. Well, the substantive claim in this case is the claim to recover civil penalties for these violations, which are available only via PAGA. And the arbitration agreement explicitly prohibits the assertion of a private attorney general act claim and a representative claim, and both of those precisely describe what a PAGA claim is. And so, you know. But if the PAGA claim is for late paycheck, she can pursue her claim for a late paycheck under the labor code, right? If she has a damages claim for a late paycheck, she can pursue that. But the PAGA claim is a different claim. It's the state's claim for a civil penalty for that violation, and that is what she's prohibited from pursuing by this agreement. And anyone else is apparently prohibited from pursuing it on her behalf, and that is the claim that is being foreclosed here. And, you know, my friend said, well, we have no objection to her pursuing that claim on her own behalf if she limits it to the penalties attributable to the violation affecting her. The problem with that is twofold. First of all, this court has made abundantly clear that a person can never be compelled to arbitrate a claim that they did not agree to arbitrate. The parties here specifically agreed to carve that claim out from arbitration. So that's not something that Viking can waive and say, well, we waived that limitation. We're now compelling her to arbitrate. Counsel, let's assume because the anti-waiver rule, as it stands, I think basically says an individual can't be forced to waive the PAGA claim. Correct? That's correct. And the PAGA claim by definition in the state is a claim on the individual's behalf and all others who have suffered the same violation. Correct? Yes. Thank you. All right. So assuming for the sake of argument that Mr. Clement had said she can arbitrate that claim in arbitration or she can arbitrate it in court, you wouldn't have a problem with that? No, not at all. And you wouldn't have a problem with the state saying you can't waive it, you can decide it in arbitration or in court. Correct? That's right. Now let's assume, going back to the chief's beginning question, and I think if you run into a problem with Concepcion and Epic, if California said you can't arbitrate this claim at all, you have to bring it in court, I don't see how that would be legal under Concepcion. That would depend on whether the FAA applies to a state's claim when a state is not a party to the agreement. That's what we've called an alternative basis for affirmance here. We've sort of said that, but that's not the issue here. But you're right, it's an open question on that, but the state hasn't done that here, correct? That's right, and that's critical. My friend said, well, if you buy that argument, then pocket claims would not be arbitrable. But the thing that that overlooks is that Iskanian has not said, as a matter of state law, that you can't agree to arbitrate or enforce an arbitration agreement with respect to a pocket claim. In this case, held that, quote, an employee's pre-dispute agreement to arbitrate pocket claims is unenforceable. Absent a showing, the state also consented to the agreement. That's an arbitration-specific rule, is it not? Your Honor, that would be an arbitration-specific rule. In our view, that's dicta in this case, and it's been dicta in every case in which the California Court of Appeal. There have been a handful of other cases where the California Court of Appeal has said that. The California Supreme Court has never said that. It has consistently described Iskanian as an anti-waiver rule. And in this case, it was unnecessary to decision because the parties did not agree to arbitrate a pocket claim. So that issue would only come up if the parties had agreed to arbitrate pocket claims and someone subject to such an agreement nonetheless objected to proceeding with arbitration. Then a court would have to face that issue, but it's not presented here and, in our view, not necessary to sustain the judgment below in this case. I'm just having trouble getting my mind around this. I get the argument that this isn't like Concepcion because Pong is not a class action. That's what I call the chill. I know how to deal with that. Now, I also know this. Suppose you lose on that. Suppose. Okay, the next question, can they bring it in court? Now, we know this. If California says, here's a claim of a certain kind which we give to certain people and they can't arbitrate it, we know that that would be preempted unlawful if it's not a general matter but is aimed at arbitration. Right? So far, I'm right. Yes. Okay. Now, suppose instead of saying you can't arbitrate it, what they do, and this is ridiculous but you'll see why I do it this way for simplification, they put a spider next to it. And there's a rule saying you can't ever arbitrate anything with a spider. Okay? Now, I guess we'd have to go back and see whether they put that spider on it. In order to be hostile to arbitration or whether it was something that applied to a lot of laws that had nothing to do with arbitration. Right? I think so. If I'm following correctly, I think the rule that you can't arbitrate anything with a spider on it is an arbitration-specific rule. Yeah, if it is, they can't do it. But if it's no contract with a spider on it. Well, wait. Let me get to step three where we are here. Because the question here on the spider analogy would be, is PAGA, with its special rules, like the spider? And you can call the spider class action. You say, that's a conception. And if the answer is they put this on to keep it out of arbitration, hey, sorry, you can't have the law at all. Because there's no way to have this law without the spider. But if they put it on generally, they can do it. They can do it. And not the briefing. If I'm right in my weird analogy, I don't know where to go. Because maybe it's just my fault. You just ignore it. You don't even have to answer the question because it's too weird. But I would like you to see why I'm having trouble with this question of whether they can bring it at all in a court if you lose on the first point. It's really tempting to take you up on the offer not to answer. But I'm going to take a stab at it anyway. Because, you know, I don't think these cases are any fun without a little bit of zoology involved. But, you know, if what's going on is that the state is imposing a spider that is inconsistent with the nature of arbitration, then that's what creates a problem. And what's happened here is what the state has said is for contracts of whether they're part of an arbitration agreement or not, you can't waive the right to bring a POGA claim in an employment agreement before the claim arises. Okay, so the spider applies to every kind of agreement. But then the next question is, okay, but nonetheless, is there something about that that has an adverse impact on arbitration specifically? And that then gets to the question is, is a representative action where a representative pursues on a bilateral basis claims that may involve events affecting multiple individuals, is that inconsistent with what Congress meant in 1925 when it said arbitration? And we know the answer to that is no. Because one of the familiar types of arbitration in 1925 was representative arbitration pursued bilateral between labor representatives and employers, between representatives of agricultural cooperatives and employers. It was not something like a class action, a modern class action, a Rule 23 class action, or an FLSA collective action that didn't exist at the time that someone might say was outside the notion of what Congress could have meant when it said settle a controversy by arbitration. And Mr. Nelson, when you look around the world of representative litigation, whether it's shareholder suits or ERISA suits or anything else you can come up with, I mean, you know, key TAM suits, I guess, are a form of representative litigation. I mean, what is this like and what is it unlike? And if we go down the route that Mr. Clement says we ought to go down, what are the consequences with respect to those representative actions? Well, I think it's quite similar to a key TAM action in a number of respects. One is that the representative in that case pursues the government's claim with respect to false claims, regardless of whether they affected that individual. So let's say it's a medical provider submitted false claims for Medicaid reimbursement. The person happens to know about it because it happened in their case, but they're pursuing that claim on behalf of the government, no matter who it affected. And because of the nature of the contractual privity between many potential key TAM relators and defendants, because they're often employees who are in a position to be relators or contracting parties who are aware of the false claim that related to that contractual arrangement, if the potential defendant were to put in a properly worded arbitration agreement in their contract with that individual, it could bar the assertion of a representative claim in exactly the same way if my friend's argument is accepted. I think the same is true of shareholder derivative actions. That's kind of a new frontier in the area of arbitration, but corporations are increasingly trying to bind their shareholders to arbitration agreements and could significantly limit the ability of shareholders to pursue representative actions that would involve potentially interests beyond their own, but that are pursued bilaterally by the shareholder on behalf of the corporation against the wrongdoer. And I take it on Mr. Clement's argument, it would not just be saying, we don't want to do this in arbitration, we don't think the nature of this action is consistent with arbitration, but if Mr. Clement prevails, we can entirely wipe out those suits, bring them in arbitration, bring them in litigation, it doesn't matter. That's right, and you know, I mean, no one is saying that if you say a PAGA claim is non-waivable, that that means employers will be required to arbitrate them. If they don't want to arbitrate them, they can always exclude them from the arbitration agreement and let them proceed in court. I don't share my friend's prediction as to what would happen in that regime. I don't think it would lead to a flight from arbitration, because in view of the authority of an arbitrator to limit the scope of discovery and proof and to limit the recovery, I suspect there would be a flight toward arbitration for PAGA claims. Obviously, employers' first choice is, let's eliminate the PAGA claim entirely if we can get away with it, but the idea that companies don't arbitrate large-scale disputes between themselves because they don't perceive any advantage to arbitrating them, I think is just empirically false. I suppose Mr. Clement might say the disadvantage of doing it in arbitration is that there's no review of the arbitrator's decision or a very limited kind of review. There certainly is limited review, and that disadvantage falls most heavily on the non-repeat players in the process who are the most likely to have an unfavorable outcome in arbitration that they would want to seek review of. Justice Thomas, any questions? No question, Mr. Chief Justice. Justice Breyer, Justice Alito, any further? Justice Gorsuch, any questions? Just one question. I wanted to give you an opportunity to respond to Mr. Clement's point, which you mentioned a couple times, not a central point, but about the other states and that California is an outlier here, and just give you a chance to respond in any way you want. Well, it's certainly true that California is the only state that has this mechanism. And I think that the reason California chose this mechanism was that it wanted to enhance its enforcement and picked the class of representatives who were the most likely to be effective representatives of its interest, as opposed to the entire public. And I think it's somewhat ironic that one of the arguments made in favor of this court's review was that if you let California do it, everyone will do it. Now California is the only state that wants to do it. I think the fact of the matter is there may be states that, for their own purposes, will make use of novel structures allowing individuals to bring actions on behalf of the state. And some of those may be in contexts where arbitration agreements might be invoked to block those. We haven't seen a lot of that, but the fact that California has chosen to do it, we think, is entitled to respect, even if California remains the only state that does so. Thank you. Justice Barrett? Thank you, counsel. Rebuttal, Mr. Clement? Thank you, Mr. Chief Justice. Just a few points in rebuttal. First, a lot has been said about the differences between PAGA claims and class actions, but I think it's worth recognizing the similarities between an employer-wide PAGA action and an FLSA collective action. I mean, the FLSA collective action is a means of securing the federal wage and hour laws on behalf of similarly situated employees. PAGA is a way for an employee to vindicate California's wage and hour laws, and it's not even restricted to similarly situated employees. It's anything goes, the whole workforce. It makes no sense to say that EPIC controls as to the FLSA collective actions, but you don't extend it to PAGA actions. The second point I want to emphasize is we don't care about this being representative in the sense that a state gets a 75% cut of the $100 violation that was provided or penalty that was provided by PAGA. That's not the sense in which the representative nature of these cases bothers us. It is the fact that it's representative on behalf of all other employees for all these disparate violations. That is what is critical here. And if you can combine those two and just re-conceptualize this as a state action on behalf of the entire workforce that one person gets to bring, then there's nothing left of Concepcion. You could easily envision or re-conceptualize the harm there that consumers that paid sales tax on the phone when they were told they were free as a violation of state law that one individual gets to vindicate on behalf of everybody who paid a little extra for their phone. And poof, there goes Concepcion. This is just too naked a circumvention. And in thinking about how this affects other laws, I do think the dogs that aren't barking here are very relevant. I mean, if this really were a threat to derivative actions, Delaware would be here. If this was a threat to the Federal Claims, the False Claims Act, QTAM actions, the United States would be here. This is an outlier just like the direct TV rule out of California was an outlier. There's a reason this is coming out of California. Third, a word on the differences between substance and procedure here. Those distinctions are always elusive. My friend talks about a PAGA claim. I don't think properly understood there is such a thing as even a PAGA claim. There's a claim for violating the labor code. If you violate the labor code by not giving the last paycheck in a timely way, there's a labor code violation. The labor code is what provides the substance here. Now, it provides specific penalties including a statutory penalty for a late final check. The only question here is whether in addition to that and damages, you also get this $100 per violation that was introduced by statute. We don't have any problem if they get it. The only reason we don't know for sure whether they get it is because my friends on the other side have so far successfully resisted the arbitration, and it would be a question for the arbitrator whether that's available. But it's certainly not off the table as far as we're concerned. And this distinction between substance and procedure, it can't be used to just get around Concepcion and Epic. It would be the easiest thing in the world to create a new treble damages remedy available only in class actions. Clearly, that new treble damages remedy would be substantive for eerie purposes. And you could then say, aha, well, now you can no longer have a class action waiver. That's effectively what this is. They've reconceptualized this claim as inherently a class-wide claim, an inherently employer-wide claim. And then they say, all right, we're going to force this into arbitration. We know full well you won't do it in arbitration. It's going to end up back in court, and we're going to have all of the problems this court tried to avoid in Concepcion and Epic. So there's a lot of conceptual issues here with procedure and substance. I just want to finish for a minute by talking about practicalities. The practicalities, on the one hand, are well illustrated by the complaint in this case. The only specific allegation Moriana makes as to herself is the timing of her final paycheck. If that's all this case were about, then an arbitrator could dispatch that case in about an hour. It's the simplest thing in the world. Cut her a check. If we have to cut a second check to the state, that's easy. But instead, nine different violations on behalf of the entire sales force. California has made clear in the Williams case you get discovery coextensive with a class action. By the time we're done trying to figure that out in arbitration, we'd have to hire a claims administrator to give the checks and identify people. Nobody's going to do it. Arbitration will be gutted in practice. And then there's this final practicality. Before Concepcion, PAGA was the statute nobody paid too much attention to. After Concepcion, 17 PAGA complaints are being filed every day. These actions are being litigated. They involve 565,000 Lyft drivers, 165,000 employees and marshals. They look in every practical effect just like class actions. They pose the same problems. And, indeed, it's even worse than that because, in practice, if you have to litigate in court the PAGA claim on behalf of the entire workforce, as the Chamber amicus brief points out, what you end up doing is getting a class action in there and settle the whole thing so you can buy employee-wide peace. Thank you, Your Honors. Thank you, Counsel. The case is submitted.